## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Lyndon's, LLC,

      Plaintiff,

                                        Case #

      -vs-                                Hon.

City of Detroit, County of Wayne,
Eric Sabree, David Szymanski,
Christopher Michels, Signature
Associates, Inc., and Jill Bryant,

      Defendants.
_____/

### PLAINTIFF'S COMPLAINT

NOW COMES Plaintiff, LYNDON'S, LLC, through its attorneys, CASTMORE LAW, PLLC, and for its complaint states as follows:

### INTRODUCTION

1. This is a case of gross governmental abuse, conspiracy and corruption showcased in national news media that cries out for a remedy. Defendants Wayne County and the City of Detroit, in concert with Treasurer Eric Sabree, and former Treasurer David Szymanski, have illegally seized property from multiple home and business owners including Plaintiff, both through an illegitimate tax foreclosure process, and in the form of equity without any compensation whatsoever.

1

2. The abuse stems from Defendant Wayne County's tax foreclosure process. Michigan law generally authorizes counties to foreclose on parcels in order to satisfy outstanding unpaid property taxes. But the Defendant County and its officials engaged in and continue to engage in abuse of this process. They do not foreclose on the parcel, sell it, keep the amount of outstanding taxes plus reasonable fees, and return the rest to the property owner. Rather, they foreclose, and in this case, give the property to the City of Detroit, allowing the City of Detroit to keep *all* of the equity for itself. As a result, Plaintiff has lost the entire value of its property, building and much of its contents, which is orders of magnitude more than the outstanding tax bills (more on this later).

3. As set forth below, this constitutes a violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution; a violation of Article X, Section 2 of the Michigan Constitution; and an impermissible inverse condemnation under Michigan law.

4. Plaintiff alleges a targeted approach to the Defendants' actions against it, which demonstrate racial discrimination, and total abuse of process.

<u>PARTIES</u>

5. Plaintiff Lyndon's, LLC ("Lyndon's") is a Michigan limited liability company with an interest in the real property commonly known as 14700 Dexter Ave., Detroit, MI 48238 (the "Property").

6. Defendant, City of Detroit ("Detroit"), is a Michigan municipal corporation with its principal place of business located within the jurisdiction of this Court.

7. Defendant, Wayne County ("County"), is a Michigan municipal corporation with its principal place of business located within the jurisdiction of this Court.

8. Defendant, Eric Sabree ("Sabree") is the current Treasurer for Wayne County and is being sued in both his personal and official capacity.

9. Defendant, David Szymanski ("Szymanski") is the former Chief Deputy Treasurer for Wayne County and is being sued in both his personal capacity and his official capacity during the time he served as Chief Deputy Treasurer as well as his subsequent time in service as Treasurer and Deputy CFO, City of Detroit, and his current role as director for legal programs for the Detroit Land Bank.

10. Defendant, Christopher Michels ("Michels") is an attorney for the City of Detroit and is being sued in both his personal and official capacity.

3

11. Defendant, Signature Associates, Inc. ("Signature Associates") is a Michigan corporation, which specializes in real estate brokerage services, property and asset management, advisory services, and tenant representation. Signature Associates does business within the jurisdiction of this Court.

12. Defendant, Jill Bryant ("Bryant"), is an employee of the City of Detroit and is being sued in both her personal and official capacity as manager at the Detroit Building Authority.

## JURISDICTION

13. This is a civil action brough seeking unpaid "just compensation", equitable relief, and other monetary damages against Defendants for violations of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, in addition to state law claims.

14. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. § 1343 and 42 U.S.C. § 1983, which authorizes federal courts to hear and decide civil rights cases; 28 U.S.C. § 2201, which authorizes declaratory judgments via the Declaratory Judgment Act; and 28 U.S.C. § 1367, which authorizes supplemental state law claims.

15. Venue is proper in this Court as Defendants, individually and collectively, conduct or have conducted their business in the Eastern District of Michigan.

## GENERAL ALLEGATIONS
## MICHIGAN'S TAX FORECLOSURE PROCESS

16. On or about October 26, 2011, Lyndon's LLC, through its resident agent, James Dockery, was the successful bidder in an auction posted by the Wayne County Treasurer's Office for the Property.

17. Plaintiff paid $42,400.00 for the Property, including a deposit of $5,000.00, and a processing fee of $35.00.

18. Real property auctions are held in September and October of the year foreclosed. Properties are offered for a minimum bid that consists of all delinquent taxes, penalties and interest. Properties not sold at the September auction are then offered at the October auction. Successful bidders will receive a Quit Claim deed to the property.

19. Lyndon's LLC obtained a Quit Claim deed to the Property dated November 17, 2011, from the Wayne County Treasurer.

20. The 2011 NOTICE OF FORFEITED PROPERTY SUBJECT TO FORECLOSURE, a paid supplement to the Detroit Free Press, November 28, December 5, and December 12, 2010 lists "The Property" 12010588. 14700 DEXTER and names RICHARD T

5

GORDON LAUREEN M GORDON GORDON RICHARD T –
LAUREEN M and JAMES DOCKERY.

21. The aforementioned listing, which refers to taxes owed and property forfeiture a full year prior to Plaintiff's ownership, and even though Plaintiff had purchased the Property with all taxes brought current, according to the County's auction website, the Property is listed in foreclosure.

22. Resident Agent James Dockery obtained through a Freedom of Information Act Request and Tax Statement dated June 9, 2011, in the name of RICHARD TO GORDON LAUREEN M GORDON for past due taxes 2007, 2008, 2009, and 2010. The statement makes clear that the county owns the Property and provision of the amounts listed does not mean the Property can be reclaimed or redeemed.

23. The County is a non-taxable entity.

24. Therefore, taxes do not accrue against a non-taxable entity.

25. The County maintains, and Plaintiff is in possession of an image of a certified letter undelivered, marked returned to sender, from December 2010, almost a full year prior to the purchase of the Property by Plaintiff.

26. The County erred in clearing out past due taxes and continued a foreclosure process even though the Property was sold at auction.

27. A new owner of property purchased at auction should only have owed taxes beginning from their date of ownership.

28. Plaintiff was foreclosed upon due to an alleged 2010 tax delinquency, but has been injured by the unconstitutional, discriminatory, and unlawful acts or actions of the Defendants, including but not limited to their unconstitutional retention of Plaintiff's equity in the Property, illegal taking of real and personal property during an eviction process, theft of property on adjacent land, as well as ongoing, continuous harassment.

29. Accordingly, and pursuant to MCL 211.78m, for property transferred to the state, a city, a village, a township, a city authority, a county, or a county authority under subsection (1), a city, village, or township under subsection (6), or retained by a foreclosing governmental unit under subsection (7), all taxes due on the Property as of December 31, following the transfer or retention of the Property are cancelled effective on that December 31, and the property is exempt from the collection of taxes under the act while held by the city, village,

township, city authority, county, county authority, or foreclosing governmental unit.

30. Although it is clear that only prorated taxes as of November 17, 2011, were due from the Plaintiff, the County continued foreclosing on the Property for taxes owed by the previous owners as shown in the tax record obtained from the County.

31. The Defendant Wayne County was responsible to administer a foreclosure process which includes an auction of forfeited property.

32. Defendant Wayne County routinely retained the *entire* amount of the proceeds of the auction including funds that exceed the amount of the tax due (equity).

33. Furthermore, again routinely, even if the sale proceeds exceed the amount of the delinquent taxes, Defendants do not return any of the excess to the property's former owner or provide compensation for that portion of the equity destroyed by underselling the parcel.

34. In *this* case, Wayne County did not sell the property at public auction.

35. Instead, after attempting to bundle the property in a nationally publicized scheme to quietly convey the Property to the City of Detroit, it eventually succeeded in gifting the Property to the City of Detroit through an illegal taking and quiet title conveyance for $0.00.

36. The City was then left to keep all of Plaintiff's equity, estimated at approximately $3,500,000.00.[1]

GENERAL ALLEGATIONS
THE PROPERTY

37. On November 17, 2011, the Wayne County Treasurer conveyed the Property to Plaintiff, via Quit Claim Deed, following a tax foreclosure sale and auction. The sale amount listed on the Quit Claim Deed from the Wayne County Treasurer shows consideration paid in the amount of $41,100.00.

38. Although Plaintiff paid the auction fee, received title, and retained a receipt for payment, the Wayne County Treasurer, in a paid supplement to the Detroit Free Press, listed the Property as subject to foreclosure for 2010 taxes (which preceded Plaintiff's auction bid and subsequent ownership) in its December 2011 listing.[2]

39. The listing erroneously included James Dockery, an individual, as well as includes the former owners RICHARD T GORDON,

---

[1] Upon information and belief, the Property was at one time packaged along with a swath of other properties as part of a deal to sell some 6,000 to Herb Strather, a well-known real estate developer. Upon information and belief, this deal fell through when the Property was pulled from the pool.

[2]        https://www.waynecounty.com/documents/treasurer/trs_2015_08-28-foreclosure-list-2011.PDF

LAUREEN M GORDON, This occurred less than two weeks after Plaintiff received title to the Property.

40. According to Wayne County's own website, property auctions are held in September and October of the year foreclosed. Properties are offered for a minimum bid that consists of all delinquent taxes, penalties, and interest. Successful bidders will receive a Quit Claim Deed to the property.

41. Thus, taxes owed from 2010 would have been paid at auction, hence the transfer of title per the auction rules.

42. James Dockery, Resident Agent of Lyndon's LLC, attempted on multiple occasions to obtain a fair assessment of the Property including visiting the Treasurer's office on several occasions.

43. On January 7, 2014, a Notice of Judgment of Foreclosure was recorded by the Wayne County Register of Deeds in Liber 51837, Page 270, Wayne County Records.

44. In July 2014, Plaintiff attempted to have the Property tax reassessed after receiving an exorbitant tax bill in 2014 by speaking directly with Treasurer Raymond Wojtowicz.

45. Treasurer Wojtowicz referred Plaintiff to David Szymanski, Chief Deputy Treasurer.

46. Resident Agent Dockery spoke directly via telephone with Szymanksi who informed him at that time: "I have other plans for this property. Please just wait until after the auction."

47. Defendant Szymanski did not accept any further calls from Plaintiff.

48. After the Auction, Szymanski advised Dockery that Plaintiff would not be allowed to redeem the Property.

49. Upon information and belief, a note was placed in Plaintiff's file that if Plaintiff attempted to redeem the Property, such redemption needed to go directly through Szymanski.

50. Upon information and belief, it is not common practice for the County to place a note on a property's file requiring redemption to go directly through the Chief Deputy Treasurer.

51. On January 7, 2015, the Wayne County Treasurer conveyed the Property to the City of Detroit Planning & Development Department for $0.00.

52. Wayne County's current Treasurer, Eric Sabree, has reviewed the file related to the Property and Plaintiff.

53. Sabree has opined that the City should convey the Property back to Plaintiff, and that the delinquent taxes should be zeroed out on the premises.

11

54. Thus far, no conveyance from the City to Lyndon's LLC has taken place.

55. Audio evidence of Sabree's opinion is available for review.

56. At one time, the Property was listed for sale on at least one website for $995,000.00. Plaintiff believes this was a fire sale price, and the Property is worth approximately $3,500,000 or more.

57. A landlord-tenant action was filed in the 36th District Court and styled *City of Detroit v. Lyndon's, LLC* (Case No. 17313764) (the "Eviction Case").

58. Plaintiff initially prevailed in the Eviction Action. However, the case was appealed by the City of Detroit and was peremptorily reversed by retired Chief Judge Columbo of the Wayne County Circuit Court before the parties had even obtained a transcript of the lower court proceedings.

59. On or about April 21, 2022, the City of Detroit applied for an Order of Eviction against "James Dockery DBA Lyndon's LLC."

60. James Dockery has never possessed an interest in the Property in his individual capacity, and does not possess a DBA, assumed name, or any other certificate which would allow him to personally operate under the name, Lyndon's LLC.

61. Upon a motion by Lyndon's LLC, the 36th District Court reversed the Order of Eviction entered against James Dockery. The matter was scheduled for further hearing on May 27, 2022. In the interim, the City of Detroit filed a new Application for Order of Eviction against Lyndon's LLC.

62. Lyndon's LLC has not been served with any eviction Order and is only relying on the 36th District Court's previous Order regarding a timetable for removal of personal property from the premises.

63. After the May 17, 2022, hearing, the City of Detroit was granted its Order of Eviction. However, it could not execute upon such Order until June 13, 2022.

64. The week before the City of Detroit was able to execute upon its Order of Eviction, and while Plaintiff was still in lawful possession of the Property, Defendant Jill Bryant in her capacity as Manager of the Building Authority caused contractors to interfere with Lyndon's LLC's moving process, by visiting the Property to pump water from a drain directly located in the loading dock of the Property.

65. On June 7, 2022, Plaintiff's counsel contacted the City of Detroit, attorney, Christopher Michels to advise that it would be impossible

for Plaintiff to remove the remaining personal property from the premises without access to the loading docks.

66. Plaintiff's Counsel demanded that the City either temporarily stop working on the drain in the loading dock until after June 13, 2022 or give Plaintiff additional time to remove its personal property from the premises once work on the project was completed.

67. Michels responded by advising that Plaintiff could use the loading docks on the other side of the building in order to remove the remaining personal property from the premises.

68. However, the other loading docks could not be access without entry onto a neighboring property that is not owned by any party to this litigation. It would have also required breaking a lock to a gate.

69. The City of Detroit agreed to give Plaintiff until June 27, 2022, but demanded to take immediate possession of the premises, and would require Plaintiff to coordinate directly with the City for access to the building.

70. Upon information and belief, on June 29, 2022, Michels entered the Property with Signature Associates, a contractor who is apparently acting as a property manager in this case, and multiple employees of the City of Detroit Building Department.

14

71. Signature Associates *are not* Court officers, Sheriffs or Deputy Sheriffs, officers of the Department of State Police, or Police Officers of the City of Detroit.

72. Defendant City of Detroit employees proceeded to cut of locks on the gates to the Property in violation of, *inter alia*, MCL 600.2918.

73. Michels, Bryant, and representatives of Signature Associates entered upon the subject Property and began destroying and/or discarding Plaintiff's personal property.

74. At no time was a bailiff present during the activity on June 29, 2022.

75. Defendant Christopher Michels contacted the Detroit Police Department, solely to detain and remove Resident Agent James Dockery from the Property and from the land located directly adjacent to the Property.

76. The adjacent parcel of property is leased by Plaintiff to store some of the contents of the Property.

77. Defendants Michels and Bryant caused locks to be placed on all fences on the Property, in addition to the adjacent property that the City does not own.

78. Following the June 29, 2022, incident, Plaintiff's counsel began corresponding with Michels regarding Plaintiff gaining access to the premises to remove its remaining belongings.

79. On June 30, 2022, Michels advised that it could allow Plaintiff access to the premises on two weekdays between 9:00 AM and 5:00 PM to remove the remainder of items. Michels also advised that Jill Bryant from the Detroit Building Authority would be handling the matter moving forward.

80. On July 1, 2022, Plaintiff's counsel requested the soonest available date that the City could provide access to the Property, and that Plaintiff would arrange to have trucks there whenever the City could accommodate.

81. Related to the July 1, 2022, exchange, Michels advised Plaintiff's counsel of an issue which remains ongoing; that is, Plaintiff moved its personal property onto an adjacent parcel which it rents from a non-party to this litigation.

82. The City of Detroit began seizing that personal property from the adjacent parcel and has not returned it to Plaintiff.

83. The City of Detroit broke and changed the lock on the adjacent property, despite not having an interest in it.

16

84. Upon information and belief, the owner of the adjacent property has been attempting to regain access to its own property from the City.

85. The City has ignored Plaintiff's requests for the return of its personal property that was located on leased property adjacent to the subject Property in question.

86. Thus far, Plaintiff estimates the property that the City has wrongfully taken from the adjacent parcel to be $100,000 in value.

87. After not receiving a response from Jill Bryant regarding his July 1, 2022, email, Plaintiff's counsel followed up on July 6, 2022, advising that this client could have trucks at the Property at 9:00 AM that Friday, and at 9:00 AM the following Tuesday. Jill Bryant responded to this email and stated:

Good morning,

We will work to have access to the building on Tuesday at 9am.
Will Mr. Dockery need one (1) or two (2) days?

88. Plaintiff's counsel followed up with an email to Bryant to advise that Plaintiff would need two (2) days to remove the personal property from the premises and was requesting Friday (07/08/2022) and Tuesday (07/12/2022). Felicia Studstill, an Account Executive of Signature Associates, advised that Friday (07/08/2022) did not work, but that Tuesday and Wednesday *could* work.

17

89. On July 6, 2022, Plaintiff's counsel advised that Tuesday and Wednesday of the following week were acceptable. He also stated: "Please confirm once you have set things up on your end and let me know if there are any instructions for Mr. Dockery or his team." No confirmation of Tuesday (7/12) or Wednesday (7/13) were made by any persons associated with the City of Detroit.

90. On July 13, 2022, Plaintiff attempted to gain access to the Property, but there was no one there to let his trucks in. After waiting a considerable length of time, the trucks that had been contracted to remove Plaintiff's personal property could not wait any longer.

91. Plaintiff's counsel attempted to coordinate with the City of Detroit or its contractors for a new date for Plaintiff to return to the Property. On July 14, 2022, Plaintiff's counsel sent the following email to Jill Bryant:

Ms. Bryant:

On July 6, Ms. Studstill advised that Tuesday and Wednesday of this week *could* work. I responded as follows:

*Tuesday and Wednesday next week are acceptable if that is the first available dates they can get in there. Please confirm once you have things set up on your end, and let me know if there are any special instructions for Mr. Dockery or his team. Thank you.*

I received no response from you or Ms. Studstill advising that these dates had been confirmed. I am asking that you provide two dates next week that Mr. Dockery can get into the property.

As an aside, there are arguments that my client has as well regarding the way that this eviction was handled, and the subsequent access he was supposed to have to the premises. Mr. Michels has advised throughout this process that it was not the City's goal to take Mr. Dockery's property. If that is the case, I don't know why supplying him with two dates next week should be an issue. Please advise as soon as possible so that we can plan accordingly.

92. Plaintiff's counsel followed up the following day. He received a response from James Noseda, an attorney for the City of Detroit, advising that Mr. Dockery had sued the City of Detroit, and communication with his clients was improper. This is despite the fact that Michels had previously advised that Jill Bryant would be handling things for the City moving forward.

93. On July 18, 2022, Michels sent an email to Plaintiff's counsel stating that in light of James Dockery filing a lawsuit against the City of Detroit, the City would no longer be allowing him access to the Property. This stance has continued, despite the fact that James Dockery sued the City of Detroit in his personal capacity and was not a party to the Eviction Case.

94. The City of Detroit continues to behave as though it owns the adjacent parcel which Plaintiff has been storing its personal property, despite

19

the fact that Plaintiff leases this parcel from a non-party to this litigation. The City *does not* own the adjacent parcel and has stolen Plaintiff's personal property that was being stored there.

95. Defendants have seized Plaintiff's Equity in the Property by foreclosing upon said property and conveying it to the City of Detroit for $0.00, which is obviously far less than its market value, and failing to return any equity in the Property to Plaintiff.

96. Defendants Wayne County, David Szymanski, Eric Sabree, or the City of Detroit have not afforded any process, plan, or legal mechanism for Plaintiff to seek or achieve the return of the Equity seized.

97. Thus, the Defendants have taken or destroyed all of Plaintiff's Equity in the Property.

98. The Defendants have refused and continue to refuse to pay just compensation for Plaintiff's Equity in the Property. These Defendants have also failed to provide any mechanism at all for any such compensation.

99. None of the Defendants have initiated any condemnation action or process for Plaintiff's Equity in the Property.

<u>GENERAL ALLEGATIONS</u>
<u>THE CONDUCT AT ISSUE HERE REFLECTS COUNTY POLICY</u>

100.     The actions described herein are a voluntary policy, custom, and/or practice of Defendant Wayne County and/or its final policymaker.

101.     This voluntary policy and/or practice of Defendant Wayne County is sufficient to impose damages and other relief pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), and its progeny.

102.     Specifically, Defendant Wayne County made the affirmative, voluntary, and discretionary decision to select and designate its own Treasurer to act as the Foreclosing Governmental Unit. See MCL 211.78(3)-(6).

103.     Moreover, Defendant Wayne County, either through enactment of laws or regulations, official agency or governmental entity policy, and/or actions taken by an official or officials with final decision-making authority has administered the County's foreclosure and auction process generally, including MCL 211.78m(8), so that after the County sells a parcel at auction, or in this case give the Property away, the County retains the entire amount of the proceeds, even if the proceeds exceed the amount of the Tax Delinquency, and never

returns anything to the property owner, nor provides any mechanism by which the property owner can secure a return of its Equity.

104.    In this case, the City of Detroit will reap the reward of Plaintiff's Equity.

105.    Additionally, despite recent changes to state law, namely the enactment of MCL 211.78t, Plaintiff has not been provided with a mechanism for retrieving its lost Equity.

106.    Accordingly, the actions at issue here were undertaken pursuant to an official county policy for purposes of *Monell*.

107.    The General Property Tax Act ("GPTA"), and specifically MCL 211.78m(8), does not require the practices that Plaintiff complains of. Rather, the Act can be read to provide for Equity to be returned to the previous owner of a foreclosed property before the resulting funds are allocated. In fact, this is what MCL 211.78t seeks to remedy.

108.    In the alternative, the Act, and in particular MCL 211.78m(8), are inherently unconstitutional: if the Act requires Defendants' conduct as set forth herein, then, the Act violates the Michigan and United States Constitutions for all of the reasons that Defendants' conduct violates them.

22

109.    The actions of Defendants were designed to intentionally or wantonly cause harm to Plaintiff due to the utter disregard of Plaintiff's constitutionally protected rights.

COUNT I
TAKING – FIFTH/FOURTEENTH AMENDMENT VIOLATION
42 U.S.C. §1983 (*KNICK*)
(AGAINST ALL DEFENDANTS)

110.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully restated here.

111.    This claim is being made against all Defendants pursuant to 42 U.S.C. § 1983 and § 1988.

112.    The Fifth Amendment, made applicable to the states via the Fourteenth Amendment, is a constitutional provision and right requiring the payment of just compensation upon a taking by the defendants. See *Knick v. Township of Scott*, 139 US 2162 (2019).

113.    Defendants have taken Plaintiff's property interests in the form of equity – that is the value of the Property to the extent it exceeds the Property's Tax Delinquencies – in addition to personal property and have appropriated this property for public use without the payment of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

114.    Defendants have refused to take any action for the payment of just compensation for their seizure of Equity and personal property from Plaintiff.

115.    By Defendants' refusal to take any action for the payment of just compensation at the time of the taking, Defendants have deprived Plaintiff of its constitutional right to just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

116.    The taking of Plaintiff's Equity and personal property also violates 42 U.S.C. § 1983 and § 1988. Plaintiff is entitled to all relief provided by these statutes.

117.    Defendants have not paid just compensation.

118.    Defendants do not intend to now pay just compensation.

119.    Defendants do not intend to pay just compensation in the future.

120.    Plaintiff has been injured and has suffered damages.

<u>COUNT II</u>
<u>TAKING – FIFTH/FOURTEENTH AMENDMENT VIOLATION</u>
<u>"ARISING DIRECTLY" UNDER THE FIFTH AMENDMENT</u>
<u>(AGAINST ALL DEFENDANTS)</u>

121.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully restated here.

122.     This claim is being made against all Defendants under the Fifth Amendment directly in the alternative to Count I.

123.     The Fifth Amendment, made applicable to the states via the Fourteenth Amendment, is a self-executing constitutional provision requiring the payment of just compensation upon the taking undertaken by Defendants.

124.     Defendants have taken Plaintiff's property interest in the form of tangible real property, Equity – that is, the value of the Property to the extent they exceed the Property's Tax Delinquency – personal property, and have appropriated said property for public use without the payment of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

125.     Defendants have refused to take any action for the payment of just compensation for their seizure of Equity and personal property from Plaintiff.

126.     By Defendants' refusal to take any action for the payment of just compensation at the time of the taking, Defendants have deprived Plaintiff of its constitutional right to just compensation in violation of the Fifth and Fourteenth Amendments to the United States

Constitution and thus the violation can be remedied by a direct claim under the Fifth Amendment.

127.     Defendants have not paid just compensation.

128.     Defendants do not intend to now pay just compensation.

129.     Defendants do not intend to pay just compensation in the future.

130.     Plaintiff has been injured and has suffered damages.

COUNT III
STATE LAW – INVERSE CONDEMNATION
(AGAINST WAYNE COUNTY, CITY OF DETROIT, DAVID
SZYMANSKI IN HIS OFFICIAL CAPACITY, AND ERIC SABREE IN
HIS OFFICIAL CAPACITY)

131.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully restated here.

132.     Defendants have taken Plaintiff's property interests in the form of tangible real property, personal property, and Equity – that is, the value of the Property to the extent it exceeded the Property's Tax Delinquency – and have appropriated the Property for public use without the payment of just compensation.

133.     Defendants have done so without using any direct condemnation processes, including those outlined under the Uniform Condemnation Procedures Act, MCL 213.51, *et seq*.

134.     Defendants have not and will not provide Plaintiff any opportunity to claim the Equity in its Property after the seizure and/or later sale of the Property, nor do Defendants provide or have a process for Plaintiff to claim compensation at the time Defendants seized title to their taken property interests.

135.     Defendants have not paid just compensation.

136.     Defendants do not intend to now pay just compensation.

137.     Defendants do not intend to pay just compensation in the future.

138.     An inverse condemnation with damages has occurred.

139.     Plaintiffs have been injured and have suffered damages.

<u>COUNT IV</u>
<u>STATE LAW – VIOLATION OF MICHIGAN CONSTITUTION ARTICLE X, SECTION 2</u>
<u>(AGAINST WAYNE COUNTY, CITY OF DETROIT, DAVID SZYMANSKI IN HIS OFFICIAL CAPACITY, AND ERIC SABREE IN HIS OFFICIAL CAPACITY)</u>

140.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully restated here.

141.     Defendants have taken Plaintiff's property interest in the form of tangible real property, personal property, and Equity – that is, the value of the Property to the extent it exceeded the Property's Tax Delinquency – and have appropriated the Property for public use without the payment of just compensation.

27

142.    Defendants have done so without any direct condemnation processes, including those outlined under the Uniform Condemnation Procedures Act, MCL 213.51, *et seq*., and in violation of Article X, Section 2 of the Michigan Constitution.

143.    Defendants have not and will not provide Plaintiff with any opportunity to claim its Equity after the seizure and/or later sale of the Property, nor do Defendants provide or have a process to claim compensation at the time Defendants seized title to their taken property interests.

144.    Defendants have not paid just compensation.

145.    Defendants do not intend to now pay just compensation.

146.    Defendants do not intend to pay just compensation in the future.

147.    Plaintiff has been injured and has suffered damages.

<u>COUNT V</u>
<u>VIOLATION OF THE EIGHTH AMENDMENT</u>
<u>42 USC § 1983</u>
<u>(AGAINST ALL DEFENDANTS)</u>

148.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully restated here.

149.    This Count is pled to the extent that Defendants argue or assert that Plaintiff "forfeited" or, as it is sometimes described, "relinquished" property pursuant to the Act.

28

150.     The Eighth Amendment to the United States Constitution is the part of the United States Bill of Rights prohibiting the government from imposing excessive fines, which the US Supreme Court has applied to action(s) involving forfeitures.

151.     The Fourteenth Amendment applies to the Eighth Amendment to states and state actors such as Defendants.

152.     By imposing and retaining an excessive fine in the form of the forfeiture of value of the Equity interest in property in excess of the Tax Delinquency, Plaintiff's Eighth Amendment Rights have been violated. See *Austin v. United States*, 509, US 602 (1993).

153.     Defendants' retention of the Equity, which by definition is exclusive of the Tax Delinquency, is punitive and not remedial.

154.     The conduct of Defendants has been reckless and undertaken with complete indifference to Plaintiff's federal right to be free from violations of the Eighth Amendment to the United States Constitution.

155.     Said actions violate the Eighth Amendment to the United States Constitution and are remedied by a money judgment against Defendants pursuant to 42 USC § 1983 and § 1988.

156.     Plaintiffs have been injured and have suffered damages.

<u>COUNT VI</u>

29

VIOLATION OF DUE PROCESS – FAILURE TO PROVIDE A
MEANINGFUL OPPORTUNITY TO BE HEARD
(WAYNE COUNTY, CITY OF DETROIT, DAVID SZYMANSKI IN HIS
OFFICIAL CAPACITY, ERIC SABREE IN HIS OFFICIAL CAPACITY)

157.    Plaintiff incorporates by reference the allegations contained in

the preceding paragraphs as though fully restated here.

158.    It is unconstitutional to deprive a person of their property

without due process of law. U.S. Constitution Article 5; Michigan

Constitution 1963 Article 1, Section 17.

159.    The GPTA is intended to provide delinquent taxpayers with the

minimum due process recognized by the United States and State of

Michigan constitutions.

160.    The Act requires that those subject to losing their property due

to delinquent taxes are entitled to no less than two (2) hearings: a

show cause hearing and a foreclosure hearing.

161.    The Act requires the show cause hearing to be scheduled for a

specific date, place, and time and at the hearing a delinquent taxpayer

is given an opportunity to challenge the foreclosure based on specified

legal grounds.

162.    A "show cause hearing" is just that: a hearing at which

someone is given a chance to "show cause" why a court should not

take some proposed action.

30

163.    Wayne County does not "schedule" an actual "show cause hearing" as required by the Act. Instead, it encourages the delinquent taxpayer to contact it to meet outside of the confines of the courthouse in the Treasurer's office or some other location. At these meetings, the delinquent taxpayer is given the unenviable and nearly impossible task of convincing the Treasurer why the Court should not enter a judgment allowing him to take their property.

164.    These meetings are not conducted in a courthouse, not recorded or otherwise preserved for appeal, and not overseen by a judge or other neutral arbiter.

165.    Based on the manner in which Wayne County conducts its own "show cause hearings," the delinquent taxpayer is forced to plead its case to the very person who is trying to take its property and who therefore gets to act as judge, jury, and executioner of the taxpayer's fate.

166.    Wayne County's failure to schedule and conduct actual show cause hearings is a violation of Plaintiff's right to due process. The form and manner of the meetings is not equivalent of a proper show cause hearing and therefore deprived Plaintiff of a meaningful opportunity to be heard.

167.    The due process rights of Plaintiff have been violated by Wayne County, its Treasurers, and the City of Detroit, and has resulted in monetary and other damages.

COUNT VII
VIOLATION OF DUE PROCESS – FAILURE TO TAKE ADDITIONAL STEPS TO PROVIDE NOTICE
(WAYNE COUNTY, CITY OF DETROIT, DAVID SZYMANSKI IN HIS OFFICIAL CAPACITY AND ERIC SABREE IN HIS OFFICIAL CAPACITY)

168.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully restated here.

169.    It is unconstitutional to deprive a person of property without due process of law. U.S. Constitution Article 5; Michigan Constitution 1963 Article 1, Section 17.

170.    The GPTA is intended to provide delinquent taxpayers with the minimum due process recognized by the United States and Michigan Constitutions. As such, delinquent taxpayers are afforded the right to adequate notice which is reasonably calculated to reach its recipient prior to Wayne County taking their property for tax bills that remain unpaid.

171.    To satisfy the due process standard in this context, additional reasonable measures are required when the County knows that its

efforts at providing notices has failed and it has or should have information which could be utilized to attempt further measures.

172. Despite these constitutional duties, Wayne County refuses to take additional steps when it knows its efforts at providing notice has failed and despite having information that could be used to try harder, as in this case.

173. As a matter of policy and practice, Wayne County fails to take such additional measures because it has a profit-making motive which discourages additional efforts to ensure the receipt of adequate notice.

174. The failure of Wayne County to take additional measures prior to taking property for delinquent taxes deprives delinquent taxpayers of their right to due process.

175. The failure of Wayne County and its Treasurers to take such additional measures when attempting to provide Plaintiff with notice prior to taking its Property deprived it of the right to due process.

<u>COUNT VIII</u>
<u>VIOLATION OF THE RIGHT TO EQUAL PROTECTION</u>
<u>(WAYNE COUNTY, CITY OF DETROIT, DAVID SZYMANSKI IN HIS OFFICIAL CAPACITY AND ERIC SABREE IN HIS OFFICIAL CAPACITY)</u>

176. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully restated here.

177.   The United States and Michigan constitutions guarantee all persons equal protection under the law. U.S. Constitution, Amendment XIV, Section 1; Michigan Constitution 1963 Article 1, Section 2.

178.   The purpose of the equal protection provisions is to protect against discrimination among similarly situated individuals thereby ensuring they are treated alike.

179.   All property owners, including delinquent taxpayers, have a fundamental right to the equity in their property.

180.   Additionally, according to Wayne County's standard policies and procedures, all property owners, except apparently Plaintiff, are offered a payment plan, and given an opportunity to redeem their properties after tax foreclosure.

181.   Unlike the GPTA, Michigan's mortgage foreclosure statutes provide a defaulting mortgagor the right to any equity in their property which remains after sale at public auctions. MCL 600.3252.

182.   The delinquent taxpayer and defaulting mortgagor are similarly situated by virtue of their delinquencies related to their property interests but are treated differently under the law with regard to the equity in their property.

183.     Additionally, it appears that delinquent taxpayers are treated differently under certain circumstances.

184.     Despite their similarity and due to the differing treatment, the laws do not provide equal protection.

185.     The unequal treatment is based on classifications which are arbitrary and without a rational basis, let alone for some legitimate or otherwise compelling governmental interest.

186.     Without such valid bases for, on the one hand, protecting mortgagees from banks and other creditors and the purchasers at mortgage foreclosure sales, and on the other failing to protect delinquent taxpayers from the County, purchasers at tax auctions, and third parties the County transfers properties to, the GPTA violates Plaintiff's right to equal protection.

187.     Additionally, Wayne County's own differing treatment between real property owners as compared to Plaintiff violates Plaintiff's right to equal protection.

**COUNT IX**
**MUNICIPAL LIABILITY**
**(WAYNE COUNTY, CITY OF DETROIT, DAVID SZYMANSKI IN HIS**
**OFFICIAL CAPACITY, ERIC SABREE IN HIS OFFICIAL CAPACITY,**
**AND CHRISTOPHER MICHELS IN HIS OFFICIAL CAPACITY)**

188.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully restated here.

189.    As set forth herein, the County, its Treasurer, and the City of Detroit, have administered the GPTA in ways which cause and result in depriving delinquent taxpayers of their rights to due process and to just compensation.

190.    More specifically, the County, through its policies and practices implemented and enforced by its Treasurer, has circumvented the requirements of due process by failing to take additional reasonable steps when providing notice that it is going to take a delinquent taxpayer's property and the equity in it.

191.    In this regard and as a routine matter part of its policies and practices, the County and its Treasurer takes no additional steps to provide adequate notice when, prior to the taking, it knows its efforts have failed to apprise the intended recipient of the taking.

192.    The reason the County and its Treasurer fail in this respect is because they are driven by profit making and saving money rather than a legitimate governmental interest in collecting delinquent taxes.

193.    As a direct result of and due to the driving force behind the County and its Treasurer's refusal to take additional steps to provide notice, Plaintiff had its Property taken without due process of law.

194.    Even if this Court determined that Plaintiff actually received notice, the County and its Treasurer still took Plaintiff's Property without due process.

195.    In this regard and despite the Legislature's addition of a "show cause hearing" that is to be "scheduled" to be held after a petition of foreclosure is filed but before a foreclosure hearing, the County and Treasurer instead ask delinquent taxpayers to make appointments for meetings where various payment arrangements are made or denied, rather than to provide the opportunity to convince the Treasurer that the property should not be taken for various legal reasons. The meetings are not held in a courtroom, before a judge, on the record, or with any of the hallmarks of fair hearing as required to provide due process.

196.    The outcome of these meetings is solely determined by the Treasurer, the very person who holds the meeting and thereafter informs the court about who "prevailed."

197.     Under this scheme, the County and its Treasurer's "determinations" in response to a delinquent taxpayer's objection to foreclosure is wholly insulated from any error or judicial review.

198.     The County and its Treasurer prefer to conduct their own meetings with taxpayers simply because that is the way it was done until 1999. Yet, back then, the "show cause" hearings were conducted after title had already vested in the County.

199.     Administered this way, all delinquent taxpayers who actually receive notice of the "show cause hearing" are deprived of one of what is supposed to be two meaningful opportunities to have their objections to foreclosure heard. And given this manner and form of the County and its Treasurer's administration of the GPTA, delinquent taxpayers are deprived of their due process right to a meaningful opportunity to be heard.

## COUNT X
## DELCARATORY RELIEF (CONSTITUTIONAL GROUNDS) (ALL DEFENDANTS)

200.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully restated here.

201.     An actual controversy exists between Plaintiff and the Defendants regarding their administration of the GPTA forfeiture-

foreclosure and transfer or conveyance process, and therefore the constitutionality of the manner and form of doing so and the legal enforceability of the Judgment of foreclosure they caused to be entered.

202.    Plaintiff is entitled to a declaration of its right to due process in the context of the GPTA forfeiture-foreclosure and conveyance process and asks the Court to determine that the County and its Treasurer must take reasonable additional steps to provide notice when they know their efforts have failed and must thereafter schedule show cause hearings to provide a meaningful opportunity to be heard before taking a delinquent taxpayer's property and equity.

203.    Plaintiff is also entitled to a declaration that the failure of the GPTA and Michigan law to provide a delinquent taxpayer a basis for and an avenue to recover the equity in its property and after it is taken violates the right to just compensation and equal protection.

### COUNT XI
### VIOLATION OF MICHIGAN'S EVICTION LAWS
### (CITY OF DETROIT, CHRISTOPHER MICHELS, AND SIGNATURE ASSOCIATES)

204.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully restated here.

205.     MCR 3.106(B) sets forth the persons who may seize property or conduct evictions as follows: The persons who may seize property or conduct evictions are those persons named in MCR 2.103(B), and they are subject to the provisions of this rule unless a provision or a statute specifies otherwise.

206.     MCR 2.103(B) provides that these persons must be either: (1) a sheriff or deputy sheriff, or a bailiff or court officer appointed by the court for that purpose, (2) an officer of the Department of State Police in an action in which the state is a party, or (3) a police officer of an incorporated city or village in an action in which the city or village is a party. This matches the persons set forth in MCR 3.106(B)(1).

207.     In this case, the persons who completed the eviction of Plaintiff were Michels, members of the Building Department, and Signature Associates who, upon information and belief, is an independent contractor.

208.     None of the proper parties vested with the authority to complete an eviction were present at the subject eviction in this case.

209.     Pursuant to MCL 600.2918 (in relevant part):

(1) Any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, is entitled to recover 3 times the amount of his or her actual damages or

$200.00, whichever is greater, in addition to recovering possession.

(2) Any tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner is entitled to recover the amount of his or her actual damages or $200.00 whichever is greater, for each occurrence and, if possession has been lost, to recover possession.

210.     Plaintiff is entitled to three times its actual damages *in addition to* recovering possession of the Property.

<u>COUNT XII</u>
<u>COMMON LAW CONVERSION</u>
<u>(CITY OF DETROIT, CHRISTOPHER MICHELS, SIGNATURE ASSOCIATES, INC., AND JILL BRYANT)</u>

211.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully restated here.

212.     Defendants City of Detroit, Michels, Signature Associates, and Bryant (the "Eviction Defendants"), despite having knowledge that Plaintiff leases the adjacent property to the subject Property, and despite having no ownership interest in the same, have gone onto said adjacent property and removed Plaintiff's personal property, worth in excess of $100,000.00.

213.     When the Eviction Defendants received Plaintiff's personal property, they know it belonged to Plaintiff and had an obligation to return it to Plaintiff.

214.     Conversion is a distinct act of dominion wrongfully exerted over another's property and/or money held in trust by using or appropriating those funds for other purposes inconsistent with Plaintiff's rights and without authority from Plaintiff, or by failing to deliver the personal property to Plaintiff.

215.     The Eviction Defendants wrongfully converted Plaintiff's personal property, thereby causing Plaintiff to incur damages resulting from the Eviction Defendants' conversion and subsequent failure to return the property, including but not necessarily limited to, damages in an amount equal to the value of the property converted, plus interest, costs, and attorney fees.

216.     Plaintiff is entitled to payment in the amount equal to the value of the personal property converted by the Eviction Defendants, plus interest, costs, and attorney fees.

<u>COUNT XIII</u>
<u>STATUTORY CONVERSION</u>
<u>(EVICTION DEFENDANTS)</u>

217.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully restated here.

218.     The Eviction Defendants conversion of Plaintiff's personal property, as described herein, has caused Plaintiff actual damages in

42

an amount equal to the value of the property converted, in addition to other costs, fees, and charges that Plaintiff has incurred directly resulting from the Eviction Defendants' wrongful conduct.

219.    Pursuant to MCL § 600.2919a, the Eviction Defendants are liable to Plaintiff for treble damages of no less than three times the value of the property converted, *in addition to* any right or remedy Plaintiff may have at law or otherwise.

## COUNT XIV
## UNJUST ENRICHMENT
## (EVICTION DEFENDANTS)

220.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully restated here.

221.    The Eviction Defendants have received Plaintiff's Equity in the Property, in addition to its personal property wrongfully taken from both the Property itself and an adjacent parcel which no Defendant has an interest in.

222.    It would be inequitable to allow the Eviction Defendants to retain these benefits without compensating Plaintiff for the same.

223.    To avoid unjust enrichment, Plaintiff should be awarded damages in the amount of its lost Equity in the Property, as well as the value of its personal property wrongfully converted.

**WHEREFORE**, Plaintiff requests the following relief:

a. Declaring the conduct of Defendants as being unconstitutional under the federal and state constitutions, even if being undertaken consistent with the General Property Tax Act;

b. Awarding any and all damages available under federal law as applicable, including but not limited to an award of nominal and punitive damages as is deemed proper against Defendants in all relevant capacities;

c. Awarding interest as provided by *Knick v. Township of Scott;*

d. An award of the costs of this suit, including attorney fees, as provided by 42 USC § 1988 or on other grounds, including any other applicable laws, rules, or statutes;

e. An award of actual damages for the personal property that the Eviction Defendants have wrongfully converted, as well as Plaintiff's lost Equity in the Property;

f. An award of treble damages on Plaintiff's statutory conversion claim against the Eviction Defendants, in addition to any right or remedy Plaintiff may have at law or otherwise;

g. Awarding Plaintiff possession of the Property;

h. Awarding Plaintiff three times its actual damages;

44

i. Grant such other relief that this Court deems reasonable and just.

CASTMORE LAW, PLLC

By: /s/ *Joshua Castmore*
Joshua Castmore (P76326)
Attorneys for Plaintiff
2475 8th St.
Wyandotte, MI 48192
Dated: August 19, 2022          (313) 608-4511