UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNDON'S LLC,

            Plaintiff,

v.

CITY OF DETROIT, *et al.*,

            Defendants.

_____/

Civil Action No. 22-11942

Nancy G. Edmunds
United States District Judge

David R. Grand
United States Magistrate Judge

## **REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 19, 25, 26)**

This case arises out of the foreclosure of a property owned by Plaintiff Lyndon's, LLC ("Lyndon's"). Lyndon's[1] has filed a complaint against the following defendants related to the foreclosure: the County of Wayne, Wayne County Treasurer Eric Sabree, and former Wayne County Treasurer David Szymanski (collectively the "County Defendants"); the City of Detroit and Jill Bryant (collectively the "City Defendants"); Christopher Michels ("Michels"), an attorney for the City of Detroit; and Signature Associates, Inc. (ECF No. 1). This case has been referred to the undersigned for all pretrial purposes. (ECF No. 17).

Now pending are three separate motions to dismiss, filed by the City Defendants,

---

[1] On July 5, 2022, James Dockery, the sole member of Lyndon's, filed a separate action against many of the same defendants that are named in this action (Docket No. 22-11507) (the "Dockery Action"). Many of the same (or similar) claims raised in the instant case also have been raised in the Dockery Action. At present, part of the Dockery Action remains pending.

the County Defendants, and Michels. (ECF Nos. 19, 25, 26). Lyndon's has filed responses to each of these motions (ECF Nos. 35, 36, 37), and the various defendants have filed replies (ECF Nos. 39, 41, 42). On March 1, 2023, the Court held oral argument on the motions.

**I.     RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the Motions to Dismiss filed by the City Defendants, the County Defendants, and Michels **(ECF Nos. 19, 25, 26)** be **GRANTED IN PART**, to the extent they seek dismissal with prejudice of Lyndon's federal law claims, and **DENIED IN PART** to the extent they seek dismissal with prejudice of Lyndon's state law claims.

**IT IS FURTHER RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Lyndon's state law claims and, thus, that those claims be **DISMISSED WITHOUT PREJUDICE**.

**II.    REPORT**

    **A.     Factual Background**

On August 19, 2022, Lyndon's commenced this action regarding the property commonly known as 14700 Dexter Avenue, Detroit, Michigan (the "Dexter Property"). In its complaint, which arises out of a foreclosure and eviction occurring at the Dexter Property, Lyndon's summarizes its allegations as follows:

> … Defendants Wayne County and the City of Detroit, in concert with Treasurer Eric Sabree, and former Treasurer David Szymanski, have illegally seized property from multiple home and business owners including [Lyndon's], both through an illegitimate tax foreclosure process, and in the form of equity without any compensation

2

> whatsoever.
>
> … The abuse stems from Defendant Wayne County's tax foreclosure process. Michigan law generally authorizes counties to foreclose on parcels in order to satisfy outstanding unpaid property taxes. But the Defendant County and its officials engaged in and continue to engage in abuse of this process. They do not foreclose on the parcel, sell it, keep the amount of outstanding taxes plus reasonable fees, and return the rest to the property owner. Rather, they foreclose, and in this case, give the property to the City of Detroit, allowing the City of Detroit to keep *all* of the equity for itself. As a result, [Lyndon's] has lost the entire value of its property, building and much of its contents, which is orders of magnitude more than the outstanding tax bills ….

(ECF No. 1, PageID.1-2) (emphasis in original). In order to more fully understand Lyndon's allegations, a discussion of the events surrounding the foreclosure of the Dexter Property is necessary.[2]

Lyndon's alleges that, on or about October 26, 2011, it purchased the Dexter Property through a foreclosure sale. (*Id.*, PageID.5). On November 17, 2011, the Wayne County Treasurer conveyed the Dexter Property to Lyndon's, via quitclaim deed. (*Id.*). Lyndon's then alleges that, even though it "had purchased the [Dexter] Property with all taxes brought current," the Wayne County Treasurer erroneously listed the Dexter Property as subject to foreclosure in December 2011. (*Id.*, PageID.6, 9).

---

[2] In resolving motions to dismiss brought under Rule 12(b)(6), courts primarily consider the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account. *See Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997). Moreover, "a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings" if the document is referred to in the complaint and is central to the plaintiff's claims. *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (internal quotations omitted). The Court may also consider state court documents and documents in the chain of title because they are "public records or are otherwise appropriate for the taking of judicial notice." *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). The documents referenced herein are all these types of materials.

It is undisputed that the Wayne County Treasurer filed a Petition for Foreclosure on June 12, 2013, and that ultimately, on March 28, 2014, the Wayne County Treasurer obtained an Uncontested Judgment of Foreclosure as to the Dexter Property.[3] (ECF No. 25-1; ECF No. 26-2). Because Lyndon's failed to redeem the foreclosed property by paying all forfeited delinquent taxes, interest, penalties, and fees by March 31, 2014, title vested in the Wayne County Treasurer as of that date.[4] (ECF No. 26-2, PageID.353 ("Fee simple title to each parcel foreclosed upon in the judgment will vest absolutely in [the Wayne County Treasurer], without any further rights of redemption, if all the forfeited delinquent taxes, interest, penalties and fees are not paid to the County Treasurer on or before March 31, 2014 . . . The Wayne County Treasurer has good and marketable fee simple title to the property, if all the forfeited delinquent taxes, interest, penalties and fees are not paid to the County Treasurer on or before March 31, 2014)); *see also* M.C.L. § 211.78k(6) ("fee simple title to property set forth in a petition for foreclosure filed under section 78h on which delinquent taxes, interest, penalties, and fees are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property

---

[3] The Judgment was entered under Michigan's General Property Tax Act, M.C.L. § 211.78, for unpaid delinquent and forfeited 2011 (and any prior year's) property taxes, interest, penalties, and fees in the amount of $67,575.83. (ECF No. 25-1).

[4] Lyndon's alleges that, in July 2014, it attempted to have the Dexter Property reassessed after receiving "an exorbitant tax bill in 2014[.]" (ECF No. 1, PageID.10). James Dockery, Lyndon's sole member, spoke by telephone at that time with Wayne County Treasurer David Szymanski, who allegedly informed Dockery that he had "other plans for this property." (*Id.*, PageID.11). Lyndon's further alleges that, upon information and belief, a note was placed in Lyndon's file indicating that if it attempted to redeem the Dexter Property, "such redemption needed to go directly through Szymanski." (*Id.*). According to Lyndon's, this is "not common practice" and is evidence of ill intent on the part of the County Defendants. (*Id.*).

4

under this section . . . will vest absolutely in the foreclosing governmental unit, and the foreclosing governmental unit will have absolute title to the property . . . .").

On January 7, 2015, the Wayne County Treasurer transferred title of the Dexter Property to the City of Detroit via a quitclaim deed for "consideration of $0.00" pursuant to the provisions of M.C.L. § 211.78m(6), which requires the Treasurer to deed all properties unsold at public auction to the local governmental unit at no cost. (ECF No. 25-2). Wayne County Circuit Court Judge Robert Columbo quieted title as to the Dexter Property to the City of Detroit on January 22, 2018. (ECF No. 25-4). Lyndon's appeal of the judgment quieting title was dismissed by the Michigan Court of Appeals in October 2018 for want of prosecution. (ECF No. 25-5).

The City of Detroit first began the process of evicting Lyndon's – and any other occupants, including James Dockery ("Dockery"), its sole member – from the Dexter Property in June of 2017 (*City of Detroit v. Lyndon's, LLC*, 36th District Court Case No. 1731364) (the "Eviction Case").[5] (ECF No. 1, PageID.12). A judgment of possession was first entered in favor of the City of Detroit in the Eviction Case on February 20, 2019. Lyndon's was able to stay the eviction proceedings by filing a motion for relief from judgment regarding the original 2014 Judgment of Foreclosure.

On January 19, 2021, Wayne County Circuit Court Judge Timothy Kenny denied

---

[5] According to Lyndon's, it "initially prevailed" in the Eviction Case. (ECF No. 1, PageID.12). This appears to be a reference to a March 16, 2018, 36th District Court order denying judgment of possession to the City of Detroit. However, Wayne County Circuit Court Judge Robert Columbo peremptorily reversed that order on May 4, 2018. (ECF No. 26-5). Lyndon's appeal of Judge Columbo's order was denied on November 13, 2018. (Docket No. 22-11507, ECF No. 11-9).

5

all of the claims brought by Dockery and/or Lyndon's with respect to the judgment of foreclosure. (ECF No. 26-6). Judge Kenny specifically held that Wayne County had provided all statutory and constitutional notice required and had provided Dockery and Lyndon's with all required due process, and that there was no "conspiracy" between the City and the County to "steal" the Dexter Property. (*Id.*). The Court further ruled that the transfer of the Dexter Property by Wayne County to the City of Detroit for zero dollars "was consistent with the requirements of [state law]." (*Id.*, PageID.368). The Michigan Court of Appeals denied Lyndon's appeal on February 23, 2021.

On March 30, 2021, a Judgment of Possession was again entered in favor of the City of Detroit. (Docket No. 22-11507, ECF No. 11-14). On April 22, 2022, an order of eviction was issued by the 36th District Court. (*Id.*, ECF No. 11-15). The City then began evicting Lyndon's and any other occupants from the Dexter Property.

Lyndon's, through counsel, then filed an emergency motion in the 36th District Court to stay the eviction, which was temporarily granted on April 28, 2022, pending a hearing. (ECF No. 1, PageID.13). According to the City, at the May 27, 2022, hearing in 36th District Court, it advised the court that Lyndon's and Dockery continued to trespass on the Dexter Property, maintaining a substantial amount of personal property there, including scrapped vehicles, boats, car parts, vendor appliances, clothing, and decommissioned firetrucks. (Docket No. 22-11507, ECF No. 11-17). Lyndon's represented by counsel, offered no defense to the eviction. The same day, the 36th District Court entered an order commanding that Lyndon's "restore the [City of Detroit] to, and put the [City] in, full possession of the premises." (ECF No. 26-7). The court further ordered

6

that the eviction would begin on June 13, 2022, and that "[a]ny property remaining at the 14700 Dexter property on June 13, 2022, shall be deemed abandoned."[6] (*Id.*, PageID.371). According to Lyndon's, on June 29, 2022, the City Defendants, along with Michels and representatives of Defendant Signature Associates, entered onto the Dexter Property, cut off the locks on the gates in violation of Michigan law, and "began destroying and/or discarding [Lyndon's] personal property." (ECF No. 1, PageID.14-15).

After June 29, 2022, Lyndon's continued to contest the state court judgments, filing an "Emergency Motion to Set Aside Order of Eviction and Judgment of Possession, or Alternatively Stay Further Execution Upon Same." (ECF No. 19-7). In that motion, Lyndon's again asserted that the City Defendants were "seizing" property and violating state eviction law. (*Id.*, PageID.141, 146-47). After a hearing, the 36th District Court denied this motion on August 22, 2022. (ECF No. 19-10). On May 9, 2023, Wayne County Circuit Court Judge Patricia Fresard issued an Opinion and Order affirming the district court's orders, agreeing that Lyndon's was not forcefully evicted, no personal property was unlawfully appropriated, and that state eviction law (M.C.L. § 600.2918) was not violated. (ECF No. 49-1).

On August 19, 2022, more than eight years after the tax foreclosure at the heart of this action, Lyndon's filed the instant action. In this case, Lyndon's again argues that it was not afforded due process in the foreclosure proceedings and that it did not owe the

---

[6] In addition to Dockery's pending *pro se* case in this Court (*Dockery v. Szymanski,* No. 22-11507), Lyndon's challenged the tax foreclosure, through its current counsel, by filing a state court complaint in April of 2022 (Wayne County Circuit Court Case No. 22-004988-CH). That case was subsequently voluntarily dismissed.

underlying delinquent taxes in the first place. (ECF No. 1, PageID.7 ("The County erred in clearing out past due taxes and continued a foreclosure process ….")). Lyndon's further alleges that it has been deprived of $3.5 million of "equity" in the Dexter Property. (*Id.*, PageID.9).

In its complaint, Lyndon's pleads fourteen causes of action against various defendants or groups of defendants. Those counts include: governmental taking under the United States Constitution (Counts I and II); inverse condemnation (Count III); governmental taking under the Michigan Constitution (Count IV); excessive fine, in violation of the Eighth Amendment (Count V); federal due process violations (Counts VI and VII); equal protection violations (Count VIII); "municipal liability" (Count IX); "declaratory relief" (Count X); violation of state eviction law (Count XI); common law conversion (Count XII); statutory conversion (Count XIII); and unjust enrichment (Count XIV). (ECF No. 1). Among other relief, Lyndon's seeks actual, punitive, and treble damages, attorney's fees, and possession of the Dexter Property. (*Id.*, PageID.44).

### B. Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

8

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

    **C.**     **Analysis**

        *1.*     *Lyndon's § 1983 Claims (Counts I, II, V, VI, VII, VIII, IX, and X) are Barred by the Statute of Limitations*

As set forth above, the defendants argue that Lyndon's § 1983 claims – including

its takings, Eighth Amendment, due process, equal protection, "municipal liability," and "declaratory relief" claims – are barred by the applicable statute of limitations.[7] (ECF No. 19, PageID.107-08; ECF No. 25, PageID.222-23; ECF No. 26, PageID.344-45). Because Congress did not specifically adopt a statute of limitations governing § 1983 actions, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003). The Sixth Circuit has held that the "appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims." *Drake v. City of Detroit, Michigan*, 266 F. App'x 444, 448 (6th Cir. 2008) (citing M.C.L. § 600.5805(10)).

Although the statute of limitations is governed by state law, the question of when a federal civil rights claim accrues remains one of federal law. *See Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). As the Sixth Circuit has recognized, "Under federal law as developed in this Circuit, [a cause of action accrues and] the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996) (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991)).

Turning to the case at hand, the Court first notes that Lyndon's federal takings

---

[7] Although Lyndon's does not mention 42 U.S.C. § 1983 in pleading each of its federal constitutional claims, they can only be brought pursuant to this statutory provision and, thus, should be analyzed accordingly. *See Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014) ("To the extent that Appellants attempt to assert direct constitutional claims, they fail; we have long held that § 1983 provides the exclusive remedy for constitutional violations.").

claims (Counts I and II),[8] which are pled against "all defendants," are properly asserted against only Wayne County. *See Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022). In *Hall*, the Sixth Circuit specifically considered "which of the many defendants in this case effected a taking of the plaintiffs' property[,]" explaining:

> "[T]he act of taking is the event which gives rise to the claim for compensation." *Knick v. Township of Scott*, --- U.S. ---, 139 S. Ct. 2162, 2170, 204 L.Ed.2d 558 (2019) (cleaned up). Here, that event was the County's taking of "absolute title" to the plaintiffs' homes. Before that event, the plaintiffs held equitable title; after it, they held no title at all. Thus, so far as the Takings Clause is concerned, the County alone is responsible for the taking of the plaintiffs' property.

*Hall*, 51 F.4th at 196. Thus, Lyndon's federal takings claims against the other defendants, whose alleged involvement came *after* the County took "absolute title" to the Dexter Property, should be dismissed. *Id.*

The Court must next determine the specific date when Lyndon's federal takings claims against the County accrued. The Sixth Circuit's decision in *Hall* speaks directly to that issue, as that court made clear that, "'[t]he act of taking is the event which gives rise to the claim for compensation[,]'" and that "that event was the County's taking of 'absolute title' to the plaintiffs' homes." *Id.* at 196. *See also Rose v. Oakland Cty., Michigan Treasurer*, No. 21-2626, 2023 WL 2823972, at *2 (6th Cir. Apr. 7, 2023) (noting that in

---

[8] In its complaint, Lyndon's pleads takings claims under both § 1983 (Count I) and as "arising directly" under the Fifth Amendment (Count II). (ECF No. 1, PageID.23-26). As this Court has recently and very specifically recognized, however, a plaintiff's assertion that it "may bring a takings claim 'directly under' the Fifth Amendment fails … [as] [t]he Sixth Circuit has 'long held that § 1983 provides the exclusive remedy for constitutional violations.'" *Evans v. City of Ann Arbor*, No. 21-10575, 2022 WL 586753, at *7 (E.D. Mich. Feb. 25, 2022) (quoting *Foster*, 575 F. App'x at 391). Thus, the analyses for Counts I and II are the same.

*Hall* the Sixth Circuit held "that an unconstitutional taking occurs when a Michigan county takes 'absolute title' to a home under the [General Property Tax Act] without paying just compensation for the former owner's equity interest . . .") (citing *Hall*, 51 F.4th at 196). As explained above, *supra* at 4-5, under M.C.L. § 211.78k(6), the County acquired "fee simple title" to the Dexter Property on March 31, 2014, when the foreclosure judgment "became final and unappealable." (ECF No. 26-2, PageID.356). Clearly, Lyndon's complaint in this case, filed on August 19, 2022, was well beyond the three-year statute of limitations.

While the foregoing analysis is fairly straightforward, even if the Court were to consider Lyndon's takings claim to have accrued on January 22, 2018, when Judge Columbo entered an Amended Judgment Quieting Title to the Dexter Property (ECF No. 25-4), its complaint was still filed well beyond the three-year statute of limitations period. *See Howard v. City of Detroit*, 73 F. App'x 90, 101-02 (6th Cir. 2003) (noting the latest date upon which a cause of action could accrue was "when the State recorded its deed"). And, Lyndon's is simply incorrect when it asserts that the statute of limitations did not begin to run until it lost *possession* of the Dexter Property in June of 2022 (ECF No. 35, PageID.511), because it lost *equitable title* to the Dexter Property much earlier.[9] *See Hall*, 51 F.4th at 195 ("The owner's right to a surplus after a foreclosure sale instead follows

---

[9] At oral argument, Lyndon's counsel argued that it could not have brought its takings claims – and, therefore, that the statute of limitations should not have begun to run – until after the City ultimately put the Dexter Property up for sale, at which time the value of the equity in the property allegedly would be established. The Court is not persuaded by this argument. Whether put up for sale or not, the Dexter Property had a determinable value at the time Lyndon's lost equitable title.

directly from her possession of equitable title before the sale. The surplus is merely the embodiment in money of the value of that equitable title."). As such, the filing of the complaint in the instant case – more than eight years after the foreclosure judgment, and more than four years after title was quieted – renders Lyndon's federal constitutional takings claims untimely.[10]

Several other claims, brought pursuant to § 1983, are also subject to dismissal because they were brought after the statute of limitations expired. For example, Lyndon's federal due process claims (Counts VI and VII), stem from actions allegedly taken – or not taken – at the time of the Dexter Property's foreclosure, which took place in 2014. Specifically, Lyndon's appears to allege that the County Defendants failed to "schedule and conduct" proper "show cause" and "foreclosure" hearings, and failed to provide "adequate notice" prior to foreclosing on the Dexter Property, as required by Michigan's General Property Tax Act, M.C.L. § 211.1, *et seq*. (ECF No. 1, PageID.29-33). The same is true with respect to Lyndon's claims for violation of the Equal Protection Clause, "municipal liability," and "declaratory relief" (Counts VIII-X) – all of which stem from or relate to actions taken during the foreclosure process. (*Id.*, PageID.33-39). Again, even

---

[10] Lyndon's also alleges that the Wayne County Defendants' taking of the equity in the Dexter Property constitutes an "excessive fine" in violation of the Eighth Amendment. (ECF No. 1, PageID.28-29). This claim fails on statute of limitations grounds for the same reasons set forth above with respect to Lyndon's federal takings claims. In addition, Lyndon's Eighth Amendment claim fails on substantive grounds, as the Sixth Circuit recently affirmed the district court's dismissal of such a claim in this context. *See Hall*, 51 F.4th at 196-97; *see also Hall v. Meisner*, No. 20-12230, 2021 WL 2042298, at *14 (E.D. Mich. May 21, 2021) (citing cases). Thus, Lyndon's Eighth Amendment claim should be dismissed on both substantive and statute of limitations grounds.

assuming that the County Defendants' actions during the foreclosure process violated Lyndon's due process, equal protection, or other federal constitutional rights[11] in some respect, such claims needed to have been brought within three years of their accrual. Because the foreclosure judgment in this case "became final and unappealable" on March 31, 2014 (ECF No. 26-2, PageID.356), and the instant action was filed in August 2022, more than eight years later, dismissal of Lyndon's due process, equal protection, "municipal liability," and "declaratory relief" claims (Counts VI-X) is appropriate.[12]

---

[11] In Counts VI, VII, and VIII, Lyndon's also references the "Michigan Constitution 1963." (ECF No. 1, PageID.30, 32, 34). To the extent Lyndon's is attempting to plead due process or equal protection claims under the Michigan Constitution, the Court should decline to exercise supplemental jurisdiction over such a claim for the reasons set forth *infra* at 15.

[12] Relying primarily on *Hall*, 2021 WL 2042298 at *8-11, the County Defendants, City Defendants, and Michels also argue that Lyndon's should have raised the constitutional and other claims it now seeks to bring in one of the prior and/or still-pending actions discussed above and, thus, such claims are barred by principles of res judicata and/or collateral estoppel. (ECF No. 19, PageID.102-07; ECF No. 25, PageID.219-22; ECF No. 26, PageID.340-44). Because the Court is recommending dismissal of Lyndon's claims on other grounds, it need not address the merits of this argument in detail. The Court notes, however, that *Hall* is distinguishable from the instant case because there – unlike here – the federal court plaintiffs had previously filed suit in state court against the County Treasurer, the City of Southfield, and a non-profit corporation, "alleging various discriminatory housing practices claims in relation to the foreclosure of their properties." *Id.* at *8. In *Hall*, such claims were dismissed by the state court; as such, the federal court found that the doctrine of res judicata barred the plaintiff's subsequent federal court lawsuit. *Id.* at *9-11. Here, however, while Lyndon's was engaged in previous state court litigation, it argues that its current claim – alleging the deprivation of equity in the Dexter Property – could not have been litigated in either the quiet title or eviction action. (ECF No. 35, PageID.509; ECF No. 36, PageID.532; ECF No. 37, PageID.556). Similarly, with respect to the defendants' collateral estoppel arguments, the Court acknowledges Judge Kenny's ruling that the Wayne County Treasurer's Office provided the required notice, took further efforts to notify Lyndon's of the pending foreclosure, the foreclosed taxes unequivocally were the responsibility of Lyndon's, and there was no merit to any claim of conspiracy between the County and the City. (ECF No. 26-6). Because Wayne County was the only named defendant who was a party to that case, however, issues of privity may exist. Again, the Court need not reach the merits of this argument because dismissal of Lyndon's federal claims is appropriate on statute of limitation grounds.

*2. The Court Should Decline to Exercise Supplemental Jurisdiction Over Lyndon's State Law Claims*

Lyndon's complaint also contains numerous state law claims, including inverse condemnation (Count III), takings in violation of the Michigan Constitution (Count IV), violation of Michigan's eviction laws (specifically, M.C.L. § 600.2918) (Count XI), common law conversion (Count XII), statutory conversion (Count XIII), and unjust enrichment (Count XIV). In light of the recommendation to dismiss all of Lyndon's federal claims – the claims upon which this Court's original jurisdiction is asserted – the Court should decline to exercise supplemental jurisdiction over Lyndon's state law claims and dismiss them without prejudice.[13] *See* 28 U.S.C. § 1367(c) (providing that a court "may decline to exercise supplemental jurisdiction," if it has "dismissed all claims over which it has original jurisdiction"); *Young v. Prison Health Servs.*, No. 16-13016, 2017 WL 2793956, at *2 (E.D. Mich. June 28, 2017) ("the dismissal of the claims over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any state-law claims that accompanied it to federal court") (citing *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002)).[14]

---

[13] Indeed, in *Hall*, 51 F. 4th at 196, the Sixth Circuit, in remanding the case to the district court, provided explicit instructions that the district court should "abstain from adjudicating" the plaintiff's takings claim under the Michigan Constitution, noting that "[w]hether the facts alleged here violate the Michigan Constitution's Takings Clause is an issue for the Michigan courts to decide."

[14] On February 28, 2023, Lyndon's filed a motion to amend, seeking leave to amend its complaint to add a state law claim for civil conspiracy against all of the named defendants. (ECF No. 43). Fed. R. Civ. P. 15(a)(2), which governs this motion, states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." However, courts should deny a motion to amend "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the

### III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motions to Dismiss filed by the City Defendants, the County Defendants, and Michels **(ECF Nos. 19, 25, 26)** be **GRANTED IN PART** and **DENIED IN PART**, as set forth above.  Specifically, all of Lyndon's federal law claims – including those claims pled against Signature Associates[15] – should be **DISMISSED WITH PREJUDICE**.  **IT IS FURTHER RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Lyndon's state law claims – including those claims pled against Signature Associates, Inc. – and, thus, that those claims be **DISMISSED WITHOUT PREJUDICE**.

Dated: July 13, 2023            s/David R. Grand
Ann Arbor, Michigan             DAVID R. GRAND
                                United States Magistrate Judge

---

opposing party or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing cases).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)).  Here, where the Court is declining to exercise supplemental jurisdiction over Lyndon's state law claims, it would be futile to permit Lyndon's to amend its complaint to add yet another state law claim.  *See, e.g., Moore v. Whitmer*, No. 21-1755, 2022 WL 18862075, at *1 (6th Cir. Aug. 12, 2022) (affirming district court's denial of motion to amend as futile where plaintiff sought to add state law claims and court was declining to exercise supplemental jurisdiction).  Thus, for the foregoing reasons, the Court will issue a separate Order denying Lyndon's Motion to Amend Complaint.

[15] Although Signature Associates did not file a motion to dismiss in this case, the analysis set forth herein with respect to both Lyndon's federal and state law claims applies equally to the claims set forth against that entity.

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 13, 2023.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
